**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 5, 2004**

AMERICAN ALTERNATIVE INSURANCE
COMPANY, INC., and DVA AMBULANCE
INC.,
    **Plaintiffs-Appellants,**

v                          **No. 121968**

FARMERS INSURANCE EXCHANGE,
also known as FARMERS INSURANCE
COMPANY, FARM BUREAU INSURANCE
COMPANY, COATES MASONRY, INC.,
and CRIPPLE CREEK, INC.,
    **Defendants,**

and

DONALD JEFFREY YORK,
    **Defendant-Appellee.**

_____

**PER CURIAM**

Under the Michigan no-fault automobile insurance act,
MCL 500.3101 *et seq.*, intentional conduct resulting in harm
strips an insured tortfeasor of the immunity from liability
otherwise given by the act. Here, the insured's conduct
was found to be wilful and wanton. The Court of Appeals

held that such conduct was not the equivalent of intentional misconduct and, so, the insured retained the immunity from liability granted by the act. We affirm the decision of the Court of Appeals, but for different reasons.

I

While attending a Christmas party in 1997, defendant Donald York drank for six or seven hours. York called his wife to pick him up because he was concerned about his ability to drive safely. But he later changed his mind and decided that he could drive himself home. On the way home, he failed to stop at a stop sign and collided with an ambulance owned by DVA Ambulance Company. DVA was insured by plaintiff American Alternative Insurance Company, which paid DVA $61,000 for damage to the ambulance. American then filed this action, seeking reimbursement from York.

York defended on the basis that, under the Michigan no-fault insurance act, as a tortfeasor in an automobile accident, he was immune from tort liability. The trial court disagreed with York. It found his conduct wilful and wanton, which it determined was equivalent to intentional conduct. Thus, the court concluded that York was not immune from suit under the no-fault act and he was liable to American. On appeal, the Court of Appeals reversed the decision of the trial court, concluding, in essence, that

the actions of York were not sufficiently wilful and wanton to be intentional.

## II

This case involves the interpretation of statutory language. Matters of statutory interpretation are reviewed under a de novo standard. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). Dispositive in this case is the rule of statutory construction that if the language of the statute is clear and unambiguous, no interpretation is necessary and the court must follow the clear wording of the statute. *Cruz v State Farm Mut Automobile Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002); *City of Lansing v Lansing Twp*, 356 Mich 641, 649; 97 NW2d 804 (1959).

## III

As part of the automobile no-fault insurance system enacted in 1972,[1] our Legislature at MCL 500.3135 abolished tort liability for harm caused while owning, maintaining, or using a motor vehicle in Michigan. The primary exception to this broad immunity was that a suit could be maintained when there was a death, serious impairment of body function, or permanent serious disfigurement. Another exception, relevant here, was when the tortfeasor had

---

[1] 1972 PA 294.

intentionally caused harm.  The Legislature defined this exception at MCL 500.3135(3), saying it encompassed:

> (a) *Intentionally* caused harm to persons or property.  Even though a person knows that harm to persons or property is substantially certain to be caused by his or her act or omission, the person does not cause or suffer that harm intentionally if he or she acts or refrains from acting for the purpose of averting injury to any person, including himself or herself, or for the purpose of averting damage to tangible property. [Emphasis added.]

This subsection contains two sentences.  The first sentence sets out the general class of injuries for which the tortfeasor is liable, i.e., harm that is intentionally caused.  The second sentence then presents an exception to this class: when the tortfeasor is attempting to avert injury, he is not liable for harm even if the harm was substantially certain to result.  Harm resulting from an attempt to avert injury is not "intentionally caused."

In this case, the insured did not act in an attempt to avert injury.  We must therefore determine if the class of harm defined by the first sentence of the subsection, "[i]ntentionally caused harm," applies.

In reviewing the trial court's determination that defendant's wilful and wanton conduct was equivalent to intentional conduct, the Court of Appeals attempted to qualify *Citizens Ins Co of America v Lowery*, 159 Mich App 611, 616-618; 407 NW2d 55 (1987), and thus engaged in a

4

discussion of the common-law distinctions between the tort concepts of "wilful and wanton" and intentional. The Court stated:

> With some qualification, we are not persuaded by defendant's claim that *Lowery* was wrongly decided. Where the statutory language is clear and unambiguous, the statute does not need interpretation and must be enforced as written. *Roberts v Mecosta Co General Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). Because § 3135 used the phrase "intentionally caused harm," and that phrase is unambiguous, we must enforce it as written. Therefore, the phrase "wilful and wanton" may be substituted for "intentional" only to the extent that it has the same meaning as "intentional." As the above quotations from *Lowery* and *Boumelhem* [*v Bic Corp*, 211 Mich App 175, 185; 535 NW2d 574 (1995)] suggest, "wilful and wanton" is generally equated with "intentional." Therefore, to the extent that *Lowery* equates "wilful and wanton" with "intentional," we agree with the decision in *Lowery*. However, to the extent that "wilful and wanton" is read to include conduct less than intentional, such as recklessness, then the decision in *Lowery* improperly interpreted the statute and cannot stand. Therefore, we agree with *Lowery* to the extent that it employs a meaning of "wilful and wanton" that is synonymous with "intentional" and we limit its holding accordingly. [252 Mich App 76, 79-80; 650 NW2d 729 (2002).]

The gist of this is, as we read it, that while much intentional conduct is wilful and wanton, not all wilful and wanton conduct is intentional. Be that as it may, this case lends itself to a simpler analysis.

The Legislature, in speaking so clearly in § 3135(3), made unmistakable its intent to define where immunity was

5

lost.  As set out in the statute, the test is: was the harm intentionally caused.[2]  The statute makes no reference to "wilful and wanton."  Accordingly, in analyzing § 3135(3)(a), the courts are to review only whether the defendant intended to cause the harm that resulted.

As to the instant case, while there is evidence that York was intoxicated, there is none to support a finding that he actually intended to collide with the ambulance and cause damage to it.  Thus, under the language of the statute, because York did not intend to cause damage to the ambulance, he is immune from suit.  Therefore, the Court of Appeals correctly determined that the trial court's finding was clearly erroneous.  MCR 2.613(C).

The trial court and the Court of Appeals applied the wrong legal standards.  However, because the Court of Appeals reached the correct result, we affirm the Court of Appeals decision for the reasons stated herein.

> Maura D. Corrigan
> Michael F. Cavanagh
> Elizabeth A. Weaver
> Marilyn Kelly
> Clifford W. Taylor
> Robert P. Young, Jr.

---

[2] This test is accurately stated in *Hicks v Vaught*, 162 Mich App 438, 440; 413 NW2d 28 (1987), which the Court of Appeals, for whatever reason, did not discuss.

6

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

AMERICAN ALTERNATIVE INSURANCE
COMPANY, INC., and DVA AMBULANCE
INC.,
     Plaintiffs-Appellants,

v                                            No. 121968

FARMERS INSURANCE EXCHANGE,
also known as FARMERS INSURANCE
COMPANY, FARM BUREAU INSURANCE
COMPANY, COATES MASONRY, INC.,
and CRIPPLE CREEK, INC.,
     Defendants,

and

DONALD JEFFREY YORK,
     Defendant-Appellee.

_____

MARKMAN, J. (*concurring*).

I concur.  Although I agree with the result reached by the majority, I find its analysis inadequate because it fails at all to address plaintiff's principal argument—that "intentionally caused harm" in the first sentence of MCL 500.3135(3)(a) is defined, by implication in the second sentence, and, as a result, encompasses not only "intentionally caused harm," but also harm that is

"substantially certain" to occur.[1]

_____

[1] At oral argument, *both* parties essentially contended that § 3135(3)(a) should be understood in such a manner. Kevin Sralla, plaintiff's attorney, stated:

> Or if you do something where you know that you're substantially certain to hit the other truck and there's no element of acting to avert harm, then I think that also would be an intentional act. And that's precisely the reason why I think the Legislature contemplated a broader umbrella for intentional acts because it used the words "substantially certain." It didn't say if you intend to do something, it said "substantially certain."

In his opening statement, William Schultz, defendant's attorney asserted:

> The Legislature intended by that particular language [in the second sentence] then to provide that there was a status of misconduct that did not get immunity. That misconduct includes and includes only intended actions where the person knows that harm is substantially certain to occur as the result of that person's conduct.

Later, Mr. Schultz stated:

> I don't believe that you can read in harmony the second [sentence] of [§ 3135(3)(a)] with an argument that in all cases there is no immunity only if there is an intended action that results in intended harm. In other words, we agree that in order to read [the first and second sentences] in harmony, there has to be a

2

Section 3135(3) enumerates several circumstances in which an insured tortfeasor may be held liable for a vehicular accident, despite the automobile no-fault act's broad personal immunity from tort liability. Section 3135, in particular, provides:

> (3) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle . . . is abolished except as to:

> (a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his or her act or omission, the person does not cause or suffer that harm intentionally if he or she acts or refrains from acting for the purpose of averting injury to any person, including himself or herself, or for the purpose of averting damage to tangible property.

While the second sentence in subsection (a) conceivably can be read to imply that the "intentionally caused harm" standard of the first sentence is to be defined with reference to a state of mind in which a person is "substantially certain" that an outcome will result from particular conduct, I do not believe that this is the better reading of this provision. Rather, "intentionally caused harm" should be given its ordinary meaning, one that

---

concession that there is some conduct less than the true intentional tort for which the person does not get the immunity provided by the no-fault act. Otherwise, it seems to us, that second [sentence] of the statute is unnecessary.

3

requires purposefulness on the part of the driver, rather than a mere awareness of probabilities. That is, absent some special definition of "intentionally" in the statute, it should be assumed that "intentionally" means "intentionally." *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).[2] Although the Legislature is free to define words to mean something other than what they ordinarily mean, it nonetheless should be assumed that words possess their ordinary meanings unless clearly defined in a contrary manner.

While it might, not unreasonably, be argued that the second sentence of subsection (a) attempts to redefine "intentionally" by impliedly equating it with "substantially certain," such an implication, in my judgment, is simply too obscure in this context to overcome the presumption that words should be understood by their ordinary meanings. Here, in the case of a term, "intentionally," that has a longstanding and well-defined meaning ranging across a variety of discrete areas of the

---

[2] See *In re Certified Question* (*Kenneth Henes v Biomass Ind, Inc*), 468 Mich 109, 114; 659 NW2d 597 (2003)(defining "intentional," for purposes of MCL 600.2961[5][b], in accordance with the *Random House Webster's College Dictionary* [1991] ["done with intention or on purpose; intended"]). See also *Cruz v State farm Mut Automobile Ins Co*, 466 Mich 588, 595; 648 NW2d 591 (2002); *Hicks v Vaught*, 162 Mich App 438, 440; 413 NW2d 28 (1987).

law,[3] § 3135(3) fails to communicate with sufficient clarity that the term here is to be given an alternative and inconsistent meaning.   Instead, the statute leaves such a conclusion to be drawn only by negative inference from what is clearly an awkward phraseology.[4]

Although I believe that the purpose of the prefatory clause in the second sentence is merely to introduce an

[3]   See, e.g., *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 171; 551 NW2d 132 (1996)(opinion by BOYLE, J.)(concluding that an "intentional tort," for purposes of MCL 418.131[1], occurs, not where the "employer is only substantially certain that injury will result from his acts," but only where the employer has "in mind a purpose to bring about given consequences"); *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 573; 489 NW2d 431 (1992)(holding that the insured's actions satisfied an insurance policy's exclusionary clause, which exempted coverage for "bodily injury or property damage expected or intended by an insured person," because the insured "purposely went to [the victim's] house and shot him four times at close range"); *People v Dykhouse*, 418 Mich 488, 502; 345 NW2d 150 (1984)(stating that a "very high risk of death" intent is insufficient to satisfy first-degree murder, which is a specific intent crime requiring proof of defendant's intention to take a life); *Book Furniture Co v Chance*, 352 Mich 521, 526-527; 90 NW2d 651 (1958)(holding that "[w]aiver is the intentional relinquishment of a known right . . . . The usual manner of waiving a right is by acts which indicate an intention to relinquish it, . . . or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive.")

[4]   I surmise that the drafters of this provision sought to restate the rule of the first sentence in the prefatory clause to the second sentence, but sought also to avoid the awkwardness of repeating the language of the first sentence in so doing.   Unfortunately, their resummarization was imprecise and has engendered confusion.

exception to the rule of the first sentence, rather than to serve as a definitional clause for the first sentence, this purpose is considerably less clear than it might have been. Therefore, I do not view plaintiff's proposed interpretation as unreasonable, but simply as *less* reasonable than that adopted by the majority. Choosing among these interpretations requires this Court to select among imperfect alternatives.

Although § 3135(3)(a) is certainly crafted more awkwardly than it might have been, I believe that the majority's interpretation of this provision is the more reasonable interpretation, and I therefore concur with the majority.

Stephen J. Markman

6