**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1554
_____

FRANCIS RIVARD, Individually and on behalf of all others similarly situated,
Appellant

v.

TRIP MATE, INC.; UNITED STATES FIRE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-21-cv-01625)
District Judge:  Honorable Joseph H. Rodriguez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 9, 2023
_____

Before:  CHAGARES, <u>Chief Judge</u>, SCIRICA and SMITH, <u>Circuit Judges</u>

(Opinion filed: March 24, 2023)
_____

OPINION[*]
_____

---

[*]    This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Francis Rivard filed a putative class action, claiming that insurance plan administrator Trip Mate, Inc. ("Trip Mate") and insurer United States Fire Insurance Company ("U.S. Fire"), were unjustly enriched when they retained a portion of Rivard's travel insurance premium after his trip was cancelled due to the COVID-19 pandemic. The District Court dismissed Rivard's complaint, holding that the existence of an enforceable contract between the parties foreclosed the unjust enrichment claim. For the reasons explained below, we will affirm the order of the District Court.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Rivard purchased a 15-day trip for himself and his wife to Scotland and Ireland to take place in May 2020. In addition to the $9,234 he paid for the trip, Rivard also paid a $598 premium to Trip Mate for a travel protection plan. The travel protection plan had three parts: Part A covered pre-departure cancellation and was underwritten by the tour company; Part B protected against post-departure issues, like lost luggage, missed connections, and medical emergencies, and was underwritten by U.S. Fire; and Part C included non-insurance services, like concierge assistance, and was underwritten by various third parties.

The tour company cancelled the trip due to the COVID-19 pandemic and reimbursed Rivard for a portion of his trip cost. Rivard then filed a claim with Trip Mate, and in accordance with the terms of the plan, he was reimbursed in travel vouchers for the remainder of his trip cost. He did not request or receive a reimbursement of any

2

portion of the premium.

Rivard, as a representative of other similarly situated insurance policyholders, brought this putative class action seeking the return of the portion of the premium associated with the post-departure coverage under Part B of the travel protection plan. He alleges that under well-settled insurance law, an insurer must return a premium when the insurer is not at risk of covering the insured peril. Because his trip was cancelled, Rivard claims that U.S. Fire faced no risk that it would need to provide post-departure coverage and so the retention of his full premium constituted unjust enrichment.

The District Court dismissed Rivard's complaint under Federal Rule of Civil Procedure 12(b)(6). The District Court held that Rivard's claim was foreclosed by the existence of an enforceable contract governing the same subject matter as the unjust enrichment claim. Rivard timely appealed.

## II.[1]

Claims that lie in equitable principles of quasi-contract, like unjust enrichment, cannot override an enforceable contract between the parties. See Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment."). Rivard argues that the contract at issue does not foreclose the unjust enrichment claim because (1) it does not address unearned premiums or partial

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2) and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp., 967 F.3d 295, 299–300 (3d Cir. 2020).

3

refunds of unearned premiums and (2) even if it did, the contract cannot be relied upon because the relevant portion of the contract is not enforceable. We disagree.

A.

In New Jersey and Michigan,[2] a contract precludes an unjust enrichment claim when the two concern the same "subject matter." See Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 227 (3d Cir. 1983) (holding that under New Jersey law "[q]uasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter"); Landstar Express Am., Inc. v. Nexteer Auto. Corp., 900 N.W.2d 650, 656 (Mich. Ct. App. 2017) ("[A] contract will be implied only if there is no express contract covering the same subject matter."). Rivard argues that a contract's subject matter is limited to its express terms. The District Court concluded that "a contract's subject matter concerns the nature of the contractual relationship between the parties more broadly than the contract's explicit terms." App. 34.

Some states foreclose quasi-contract claims only if they conflict with the express terms of a contract, while other states focus on the subject matter of the dispute. See, e.g., In re Generali COVID-19 Travel Ins. Litig., 576 F. Supp. 3d 36, 49, 50, 51 (S.D.N.Y. 2021), aff'd sub nom. Oglevee v. Generali U.S. Branch, No. 22-CV-336, 2022

---

[2] The Court need not decide whether the laws of New Jersey (the forum) or Michigan (where Rivard executed the contract) apply to this dispute because the two states' laws do not conflict on the legal questions at issue in this case. See On Air Ent. Corp. v. Nat'l Indem. Co., 210 F.3d 146, 149 (3d Cir. 2000) ("[When] there is no conflict of law, . . . the court should avoid the choice of law question.").

4

WL 16631170 (2d Cir. Nov. 2, 2022) (placing pertinent state laws into the two groups). The existence of two categories of states — those that focus on a narrow formulation (the express terms of the contract) and those that consider a broader formulation (the subject matter of the dispute) — demonstrates that "subject matter" must mean something more than a contract's express terms. We accordingly agree with the District Court that subject matter must reach more broadly than a contract's express terms. We conclude, therefore, that Michigan and New Jersey — which both use the broader "subject matter" formulation — foreclose unjust enrichment claims when the contract and the claim concern the same "subject matter," even if no express term governs the exact issue in question.

That conclusion is bolstered by the case law. Although there is little authority defining "subject matter" in this context, the existing case law confirms that "subject matter" sweeps more broadly than a contract's express terms. A Michigan appellate court has considered this exact issue, faulting the plaintiff for "conflat[ing] the subject matter of the Agreement with its terms" and holding that because the unjust enrichment claim concerned the same subject matter as the Agreement, that claim was barred. Sbr Assocs. II, LLC v. AFJ Dev. Co., LLC, No. 354992, 2021 WL 3233566, at *1, 4 (Mich. Ct. App. July 29, 2021).[3] And in considering whether a contract clause was

---

[3] The Michigan appellate court decision is an unpublished opinion. Although Michigan court rules note that an "unpublished opinion is not precedentially binding," the rule also states that such decisions should "not be cited for propositions of law for which there is published authority." Mich. Court Rules 7.215(C)(1). The parties have not pointed to any additional Michigan authority — and we are aware of none — that expressly addresses whether the subject matter of a contract is broader than its terms. Given the

unenforceable for indefiniteness, we have assessed whether the relevant clause affected "the subject matter of the contract," which we defined as the "material and essential terms" of the contract more broadly. Echols v. Pelullo, 377 F.3d 272, 276, 278 (3d Cir. 2004).[4] In sum, if the contract and the unjust enrichment claim concern the same subject matter, regardless of whether the contract's express terms address the exact issue underlying the unjust enrichment claim, that claim is foreclosed under the laws of Michigan and New Jersey.

Here, the subject matter of the contract is the insurer-insured relationship with respect to the May 2020 trip. Via his unjust enrichment claim, Rivard seeks a refund of a portion of the premium paid to insure the trip. That claim undoubtedly falls within the insurer-insured relationship, even if the contract does not include an express provision with respect to unearned premiums.[5] Put another way, as long as the contract is

---

dearth of pertinent case law, we find it appropriate to rely on the unpublished decision as a predictor of Michigan law on the subject. See also Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022) (holding that when ruling on a novel issue of state law, we "may be informed by decisions of state intermediate appellate courts . . . and other sources tending convincingly to show how the highest court in the state would decide the issue at hand." (quotation marks omitted)).

[4] Rivard argues that just because "the Court in *Echols* happened to use 'subject matter' to refer [to] the contract's 'material and essential terms' in enforcing the contract there[, that] does not have any bearing on whether Plaintiff's unjust enrichment claims are foreclosed by the Plan." Rivard Br. 33. But that argument misses the mark. In Echols, we discussed the scope of a contract's "subject matter," the exact question at issue here; the fact that we were considering a different legal claim is immaterial.

[5] Although not discussed by either party, Rivard's claim likely conflicts with the excess insurance provision, an express term of the contract. See App. 75 ("Recovery of losses from other parties does not result in a refund of plan payment paid."). Rivard recovered his loss — the trip cost — from the tour company. Under the provision, that recovery means that he is not entitled to a refund of any portion of the "plan payment," the term the contract uses to refer to the premium.

enforceable, the existence of a contract covering the same subject matter as the unjust enrichment claim forecloses that claim altogether.

## B.

Rivard further argues that even if the dispute is within the subject matter of the contract, Part B of the contract — which covers post-departure issues — is not enforceable because the insurer's lack of risk means it provided no consideration in return for the portion of the premium associated with that part of the contract. Rivard is correct that as a matter of law, a contract must be enforceable to preclude a quasi-contract claim like unjust enrichment. See MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 733–34 (D.N.J. 2008); Biagini v. Mocnik, 120 N.W.2d 827, 828 (Mich. 1963). And while a failure of consideration makes a contract unenforceable, Rivard contends only that the defendants failed to provide consideration as to Part B of the contract. For Rivard to prevail, therefore, Part B must be severable from the contract as a whole. Because we hold that Part B is not severable,[6] the contract is enforceable, and it forecloses Rivard's unjust enrichment claim.

Michigan and New Jersey law look to the parties' intentions and the circumstances surrounding the contract to determine whether it is severable or inseverable. See City of Lansing v. Lansing Twp., 356 Mich. 641, 658 (1959); Integrity Flooring v. Zandon Corp., 130 N.J.L. 244, 247 (1943). The nature of the consideration "appears to be the principal test." City of Lansing, 356 Mich. at 658. See also Integrity Flooring, 130

---

[6] Insofar as we hold that Part B is not severable, we need not decide whether the defendants provided consideration as to that part of the contract.

7

N.J.L. at 247 ("A contract is said to be entire when the consideration moving from the promissor is conditioned upon the complete performance by the promissee of his promise. On the other hand, a contract is said to be divisible when performance is divided in two or more parts with a definite apportionment of the total consideration to each part." (citations omitted)).

Here, Rivard paid $598 as a gross premium for the entire travel protection plan. The travel plan itself does not apportion the premium amongst the different parts of the contract. Rivard argues, however, that given two Michigan statutes,[7] the portion of the premium associated with Part B is known to the defendants and would be revealed in discovery. Rivard relies on City of Lansing, a Michigan Supreme Court decision, which notes that a contract is severable when the consideration "is susceptible of division and apportionment." 356 Mich. at 658 (emphasis added). But Rivard's reliance on that phrase is overblown. The contract at issue in City of Lansing set one price for the building of four fire stations. Id. at 659. We assume that, in that case, the price associated with each fire station was "susceptible" to division and could come out in discovery. Despite the susceptibility to apportionment, the contract was held to be inseverable given that the payment was contingent "not on the completion of a specific

---

[7] See Mich. Comp. Laws Ann. § 500.1287 (requiring sellers of travel plans that include travel insurance, travel assistance services, and cancellation fee waivers to provide consumers with an opportunity to obtain information regarding the "pricing of each"); id. §§ 500.1285(1)(a), (2)(b) (requiring a travel insurer to report for tax purposes premiums allocable only to travel insurance, and not to travel assistance services or cancellation fee waivers).

8

portion of the work" but on completion of the whole. Id.[8] Here too, the premium involved a total price, and the payment was not contingent on completion of individual units or portions of the contract. City of Lansing, therefore, supports the conclusion that the contract in this case is not severable.

New Jersey law requires the same result. In Integrity Flooring, the New Jersey Supreme Court found that the contract had "two parts," the laying and the finishing of floors. 130 N.J.L at 247. Although the consideration associated with each part was likely susceptible to apportionment following discovery on the project costs, the construction contract was held to be inseverable because the pricing scheme in the contract did not correlate to the costs associated with the two parts. Here, even though it is plausible that discovery could yield an apportionment of the consideration, that on its own is insufficient to hold the contract severable given the interdependent nature of the consideration. The $598 premium was certainly interrelated among the travel protection plan's parts, given that the risk of trip cancellation affects the likelihood of post-departure risks and contingencies arising, which in turn affects the prices of the post-departure insurance and the concierge assistance services. See also Generali, 576 F. Supp. 3d at 52 (making a similar point). The interrelated nature of the consideration, regardless of its

---

[8] The Michigan Supreme Court further held that the inclusion of a liquidated damages clause relating to the completion of all four fire stations, and not to the individual units, demonstrated that the contract was inseverable. City of Lansing, 356 Mich. at 659. Here too, the contract included several provisions that related to the contract in its entirety, and not just to Part B. See, e.g., App. 69 (free look provision); id. (terms and conditions applicability provision); App. 75 (choice of law provision); id. (concealment and misrepresentation provision).

susceptibility to apportionment, demonstrates that the contract is not severable.

Similarly, in Menorah Chapels, the divisibility of the consideration was insufficient to conclude that the contract was severable. In that case, a party contracted with a funeral home for several services, each of which were independently priced and listed in the contract, as required by a New Jersey regulation. See Menorah Chapels at Millburn v. Needle, 899 A.2d 316, 322 (N.J. Super. Ct. App. Div. 2006) (citing N.J. Admin. Code § 13:36–9.8(a)). The court concluded that the contract was inseverable even though the contract itemized the costs associated with each service. Id. at 323.[9] That court instead held that neither party exhibited an intent to accept part performance at the rate specified in lieu of performance of the entire contract. Id. The same is true here. The contract was take-it-or-leave-it: Rivard did not have the option to purchase certain parts of the contract and not others. It is also undisputed that Rivard assented to all parts of the contract at the same time. The nature and circumstances of the contract, therefore, demonstrate that it is not divisible.

Given that the contract is not severable, any failure of consideration as to Part B is inconsequential and the contract remains enforceable. The existence of an enforceable contract on the same subject matter as Rivard's unjust enrichment claim forecloses that claim altogether. The District Court, therefore, properly dismissed the complaint.

---

[9] Although the services that defendants sought to be severed had been subcontracted to a burial society, the New Jersey court did not find the involvement of a separate party to be significant to the severability question. Menorah Chapels, 899 A.2d at 319. Here, like in Menorah Chapels, the involvement of different parties in each of the contract's parts is not dispositive of severability.

10

## III.

For the foregoing reasons, we will affirm the order of the District Court.