HUNN v CITY OF MADISON HEIGHTS

1. LABOR RELATIONS—CIVIL SERVICE EMPLOYEES—DISCHARGE—SUCCESSIVE SUSPENSIONS—STATUTES—POLICE OFFICERS.
Discharge of a policeman following a one-day suspension cannot be construed to come within a statutory prohibition against successive suspensions of municipal civil service employees (MCLA 38.513).

2. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT—LANGUAGE—ORDINARY MEANING.
It is a cardinal rule of statutory construction that the legislative intent must be gathered from the language used, if possible, and that such language shall be given its ordinary meaning unless a different interpretation is indicated.

3. LABOR RELATIONS—CIVIL SERVICE—DISCHARGE OF EMPLOYEE—POLICE OFFICERS—FILING CHARGES—NOTICE OF WRONGDOING—STATUTES.
Charges against a police officer must be filed with a municipal civil service commission within 90 days from the date of actual notice of the alleged wrongdoing or the charges are void and the discharge of a police officer based upon those charges is illegal and ineffective (MCLA 38.514).

4. ADMINISTRATIVE LAW—REVIEW—HEARING ON APPEAL—ADDITIONAL TESTIMONY—APPEAL ON THE RECORD.
Testimony of additional witnesses was erroneously ordered in an appeal from an order of a municipal civil service commission where the statute providing for such an appeal specifically provides that the appeal shall be heard upon the record and no additional proofs shall be introduced (MCLA 38.514).

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 48 Am Jur 2d, Labor and Labor Relations §§ 246, 1191, 1193.
[2] 73 Am Jur 2d, Statutes § 194 et seq.
[4] 2 Am Jur 2d, Administrative Law §§ 722, 723.
[5] 2 Am Jur 2d, Administrative Law § 747.
[6] 2 Am Jur 2d, Administrative Law §§ 449, 453.
[7] 2 Am Jur 2d, Administrative Law §§ 646–649.

5. Administrative Law—Review—Civil Service.

A court reviews an administrative decision by examining the record to determine if the decision is supported by competent, material and substantial evidence and only if the decision is not supported by such evidence, or if it is contrary to the law, can the court overturn the decision of a civil service commission.

6. Administrative Law—Review—Scope of Review—Evidence—Findings.

An appellate court in reviewing an administrative decision examines the evidence not to determine whether the probabilities preponderate one way or the other but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the appellate tribunal.

7. Administrative Law—Review—Courts—Jurisdiction.

The judiciary has an obligation to refrain from interference with the acts of public administrators when performed within the scope of their authority, even though in sustaining the strict jurisdictional limits of judicial authority the courts may also be delaying the final adjudication of a controversy; judicial review of administrative proceedings has strict, immutable boundaries which judges may not constitutionally cross without trespassing into territory supervised by legislative bodies.

Appeal from Oakland, James S. Thorburn, J. Submitted Division 2 March 14, 1975, at Lansing. (Docket No. 20854.) Decided April 9, 1975.

James Hunn appealed to the circuit court from an order of the Madison Heights Civil Service Commission upholding his discharge from employment by the City of Madison Heights. Reversed. Defendant city and its civil service commission appeal. Reversed and the order of the civil service commission reinstated.

*James Paterson,* for plaintiff.

*Kasoff, Young, Gottesman, Kovinsky, Friedman & Walkon, P. C.,* for defendants.

Before: Danhof, P. J., and D. E. Holbrook, Jr. and O'Hara,* JJ.

Danhof, P. J. Plaintiff is a Madison Heights police officer whose discharge by the city manager from the department was upheld by the Madison Heights Civil Service Commission. An appeal was taken to the circuit court, and the trial judge reversed the ruling of the commission and ordered the plaintiff reinstated with full back pay. An order was issued staying further proceedings pending appeal by the defendants.

On August 2, 1972 the city manager caused to be served on plaintiff, James Hunn, written notification of his dismissal from the department. This letter included three specific charges of misconduct best summarized by a quotation from the dismissal letter itself:

"This is to advise you that you are hereby discharged from your position as a Police Officer with the City of Madison Heights Police Department for the following reasons:

"1. That on April 18, 1972 you did borrow the sum of $120.00 in the form of a check and cash from Mr. Charles R. Hill, a prisoner then incarcerated in the Madison Heights Jail. This incident first became known to the City on or about July 11, 1972.

"2. That on April 18, 1972 you did furnish Mr. Charles R. Hill a 'six-pack' of beer while Mr. Hill was a prisoner in the Madison Heights Jail. This incident first became known to the City on July 28, 1972.

"3. That at 1:42 a.m., July 25, 1972, you did make a false report of a felony allegedly committed at a loca-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tion 'three buildings west of the Daily Double Bar' on Ten Mile Road in the City of Madison Heights, the place of which alleged felony you later changed to a location in the City of Detroit, and which felony report you later told Sgt. Frank Good was a false report."

The letter continued to specify the precise rules and regulations of the Madison Heights Police Department which this conduct was deemed to violate, as well as referring generally to the provisions of "Act 78 of PA 1935, as amended", being MCLA 38.501 *et seq.;* MSA 5.3351 *et seq.* Throughout these proceedings, plaintiff has made a minimal effort to refute the factual accuracy of these charges.

Plaintiff filed objections and requested a public hearing before the civil service commission. Hearings were held on August 15, 22 and 29, 1972. The city presented seven witnesses, the plaintiff only one; a city councilman who testified to certain lax practices in the police department. A written opinion and an order of the commission was filed on September 20, 1972.

The commission unanimously concluded that "Officer James Hunn was guilty of gross misconduct in borrowing money from one James *[sic]* Raymond Hill who was then a prisoner in custody of the Madison Heights Police Department and as extra consideration for said loan furnished said prisoner with a six-pack of beer". The commission affirmatively found "that all of the foregoing acts first became known to the City of Madison Heights on July 2, 1972". Continuing, the commission stated "that the foregoing acts constitute misconduct, neglect of duty, failure of good behavior, and misfeasance in office on the part of Officer Hunn".

Next, the commission considered the false felony report charge and found that on July 25, 1972

plaintiff Hunn called the officer in charge of the desk "to say that he had been attacked in the City of Madison Heights by some unknown assailants and had been robbed and, therefore, would not report in for duty that morning. Subsequently, Detective Sergeant Frank Good, at the request of Lieutenant William Sloan, investigated this report and determined by Officer Hunn's own admission that the report was a false one". The commission went on to find that "the foregoing charge of misconduct, dishonesty, failure of good behavior, and misfeasance was proved through the witnesses produced by the city. Neither Mr. Hunn nor anyone in his behalf appeared to refute this testimony". Based upon these findings of fact, the commission determined that the city had sustained its burden of justifying the removal of officer Hunn from the police department. From this opinion and order, the plaintiff appealed to the circuit court.

The trial court disposed of the false felony charge at a hearing held on October 3, 1973. The record discloses that when the discrepancies in the felony report became known, Lieutenant William Sloan, defendant's shift commander, ordered the plaintiff to prepare a written statement concerning the incident. Plaintiff refused to comply with this direct order of his superior officer. Consequently, by letter dated July 27, 1972, city manager Swem notified plaintiff Hunn that he would be suspended for one day, and his request for a sick day to cover the period involved in the false felony report charge would be denied.

The trial court was of the opinion that because the plaintiff was given a one day suspension by the city manager in a letter July 27, 1972 in which the false felony report was mentioned, no further pen-

alty could be imposed due to the provisions of MCLA 38.513; MSA 5.3363. This statute sets forth the conditions under which a fireman or policeman can properly be disciplined, and it provides "That successive suspensions shall not be allowed". The trial court ruled that if plaintiff Hunn were to be discharged after the disciplinary action previously taken by the city manager, this would constitute a "successive suspension" within the meaning of the statute. In so ruling, the trial court erred.

First, the July 27, 1972 letter quite explicitly stated the reason for the one day suspension: "For refusing a direct order of a superior officer, when directed to write a report covering the entire incident, you are hereby given a one day suspension without pay, which suspension shall be taken on your regular shift July 27, 1972." This disciplinary action was not taken because of the false felony report, a serious form of misconduct; but rather, it was taken because of plaintiff's refusal to obey an order, a relatively less serious infraction commensurate with the relatively minor punishment imposed.

Secondly, the statutory prohibition against successive suspensions included in MCLA 38.513; MSA 5.3363 is, by the expressed terms of the statute, confined to cases of suspension and it does not apply to cases of discharge. The statute clearly states immediately before the provision barring successive suspensions: "Nothing in this act contained shall limit the power of an appointing officer to suspend without pay, for purposes of discipline, an employee or subordinate for a reasonable period, not exceeding 30 days: Provided, however, That successive suspensions shall not be allowed." Discharge following a suspension cannot be construed to come within the statutory prohibi-

tion; indeed, in most cases, a discharge would be expected to follow a suspension during which an investigation is made and formal proceedings are conducted as required by statute.

Furthermore, the word "suspension" is alone used in the proviso; while the word "discharge" is used elsewhere in the statute, it is not included in this part of the statute. The plaintiff argues that these two words are used synonymously, and that a discharge is really a permanent suspension. This contention fails to account for the legislative intent evidenced by use of only the word "suspension" and overlooks the common meaning of both words. "It is a cardinal rule of statutory construction that the legislative intent must be gathered from the language used, if possible, and that such language shall be given its ordinary meaning unless a different interpretation is indicated." *Goethal v Kent County Supervisors,* 361 Mich 104, 111; 104 NW2d 794 (1960).

The term "suspension" is defined in Webster's Third New International Dictionary (1966), p 2303 as: "temporary forced withdrawal from the exercise of office". The term "discharge" is defined, p 644, as: "to dismiss from employment: terminate the employment of * * * release or dismissal esp[ecially] from an office or employment". Thus, these terms convey different meanings and they cannot be interpreted as being interchangeable within the context of the statute. The ultimate discharge of the plaintiff was not a suspension, and it was not prohibited by MCLA 38.513; MSA 5.3363.

During the pendency of this suit in the circuit court, the decision in *Solomon v Highland Park Civil Service Commission,* 47 Mich App 536; 209 NW2d 698 (1973), *lv den,* 390 Mich 790 (1973), was

released. In that case, this Court held that under the provisions of MCLA 38.514; MSA 5.3364, charges must be filed within 90 days from the date of actual notice of the wrongdoing, or the charges are void and the discharge of a police officer based upon those charges is illegal and ineffective.

In view of the *Solomon* decision, the trial court felt that the record made before the civil service commission did not establish with sufficient definitiveness, the date on which the city received actual notice of the plaintiff's wrongdoing involving the beer and the loan. Therefore, the court ordered the taking of additional testimony. Counsel for the defendants objected vehemently and refused to participate in the examination of witnesses. Nevertheless, testimony was taken from five witnesses during a hearing before the trial court. From this testimony, the trial court concluded that the city had received actual notice more than 90 days before the date on which the notification of charges was served on the plaintiff in the form of the August 2, 1972 letter from the city manager.[1] The trial court held that "the matter was not brought in timely fashion", and that "all charges should be dismissed and the officer should be reinstated with full pay".

The trial court erred in ordering the taking of additional testimony. The statute providing for appeal to the circuit court from the determination of a municipal civil service commission, MCLA 38.514; MSA 5.3364, specifically provides that "the circuit court shall proceed to hear the appeal upon the original record taken therein and no addi-

---

[1] Without encouraging the procedure followed in this case, it should be noted that the testimony taken at the improperly conducted hearing was very equivocal in nature, and does not conclusively support the plaintiff's contention that the city received actual notice before May, 1972.

tional proof shall be permitted to be introduced". That the defendant city was unwilling to agree to a remand to the commission in order to establish the time at which the city received or should have received knowledge of plaintiff's transgressions is no justification for violating the clear statutory directive. The power of a circuit court to order remand for the taking of additional proofs is not limited to cases wherein the parties agree to this procedure.

The record is not devoid of a determination as to when the city received actual notice which would permit the circuit court to apply the rule in *Solomon.* The formal written opinion of the Madison Heights Civil Service Commission, after finding that the plaintiff did furnish beer and borrow money from the prisoner, lists as its sixth conclusion of fact the following:

"6. That all of the foregoing acts first became known to the City of Madison Heights on July 2, 1972."

The trial court should have limited its review to determining "whether or not there is substantial evidence to support the finding of the civil service commission". *O'Dell v Flint Civil Service Commission,* 328 Mich 631, 636; 44 NW2d 157 (1950). See also *Dillon v Lapeer State Home & Training School,* 364 Mich 1, 6–9; 110 NW2d 588 (1961).

The very limited nature of the review of a decision of a municipal civil service commission by a circuit court was discussed in *Montiy v Civil Service Board of the City of East Detroit,* 54 Mich App 510, 513; 221 NW2d 248 (1974), which cited *Detroit v General Foods Corp,* 39 Mich App 180; 197 NW2d 315 (1972), for the rule that a court reviews an administrative decision by examining the record to determine if the decision is supported

by competent, material, and substantial evidence. Only if the decision is not supported by such evidence, or if it is contrary to the law, can the court overturn the decision of a civil service commission. The court has no power to determine disputed question of fact.

The Court in *Montiy* noted a further limitation on the scope of review in the circuit court by citing *Carroll v City Commission of Grand Rapids,* 266 Mich 123; 253 NW 240 (1934), as quoted in *O'Dell v Flint Civil Service Commission, supra,* 328 Mich at 637:

> " 'And in examining into the evidence the appellate court does so not to determine whether the probabilities preponderate one way or the other but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the appellate tribunal.' "

In *Lepofsky v Lincoln Park,* 48 Mich App 347, 359–360; 210 NW2d 517 (1973), the circuit court, while purportedly reviewing an administrative decision to deny a commercial license, conducted a full-blown trial of the issues complete with numerous witnesses; probably because the administrative record was inadequate. This Court disapproved the circuit court's method of proceeding, recognizing that the judiciary has an "obligation to refrain from interference with the acts of public administrators when performed within the scope of their authority. *Washington Agency v Insurance Commission,* 309 Mich 683; 16 NW2d 121 (1944)".

The Court went on to conclude:

> "This obligation, of course, extends to the inferior courts over which we have superintending control. The judiciary's jurisdiction extends only so far as to allow

review of administrative acts that are without the bounds of legal authority. This principle is mandated by the very character of our governmental system and its reliance on the precept of separation of powers to assure the system's democratic operation. Const 1963, art 3, § 2. To willingly allow the lower court to improperly review the administrative proceedings of the Lincoln Park city council would be to abdicate our jurisdictional responsibility, even though in sustaining the strict jurisdictional limits of judicial authority here we may also be delaying the final adjudication of a controversy that is long overdue. The latter consequence is unfortunately unavoidable. It does serve, however, to once again stress to all courts the often illusive point that judicial review of administrative proceedings has strict, immutable boundaries which judges may not constitutionally cross without trespassing into territory supervised by legislative bodies."

Counsel for plaintiff Hunn argued forcefully before the civil service commission that the charge involving the loan and the furnishing of beer should be dismissed because these events occurred on April 18, 1972, more than 90 days before the filing of charges on August 2, 1972. The commission rejected this contention, finding as fact that actual notice was received by the city within the 90 day statutory limitation. An examination of the extensive record made before the civil service commission discloses that it includes competent, material, and substantial evidence to support the commission's conclusion that the city first received actual notice within this period.

The record reveals that Mr. Hill, the prisoner who lent money to plaintiff Hunn and to whom plaintiff Hunn furnished beer, informed the chief of the Madison Heights police department of these events on July 5, 1972. Mr. Hill gave this information to Lieutenant Sloan just before that day.

Prior to July 6, supervisory personnel in the Madison Heights police department had "heard rumors" of the loan incident, but it was not until July 28, 1972 that the involvement of alcoholic beverages was mentioned. While there is some indication that low level personnel may have been aware of some impropriety involving plaintiff Hunn and the prisoner, nothing was introduced into the record to establish that command officers had knowledge of these events more than 90 days before the charges were filed.

Our resolution of these issues renders moot the remaining issue raised in this appeal.

The judgment of the circuit court is reversed; the order of the civil service commission discharging plaintiff is reinstated. No costs.