GOODRIDGE v YPSILANTI TOWNSHIP BOARD

Docket No. 137346. Submitted December 14, 1994, at Lansing. Decided March 20, 1995, at 9:10 A.M. Leave to appeal sought.

Jerry T. Goodridge petitioned the Washtenaw Circuit Court for review of a decision of the Ypsilanti Township Civil Service Commission that sustained the termination of the petitioner's employment as Ypsilanti Township's fire chief by the respondent, Ypsilanti Township Board. The court, Ross W. Campbell, J., affirmed. The petitioner appealed.

The Court of Appeals *held:*

1. The charges against the petitioner were void ab initio because they were not brought within ninety days of the alleged violations, as required by MCL 38.514; MSA 5.3364.

2. Because the language of MCL 38.514; MSA 5.3364 is clear and unambiguous, judicial construction of the statute in *Werner v Macomb Co Civil Service Comm,* 77 Mich App 533 (1977), *Hunn v Madison Heights,* 60 Mich App 326 (1975), and *Solomon v Highland Park Civil Service Comm,* 47 Mich App 536 (1973), was inappropriate and the conclusion of the Court of Appeals in these cases that, rather than running from the date of the violation, the ninety-day period begins running when the discharging authority discovers the misconduct is unsustainable. Because the Court erred in engaging in statutory construction in those cases, departure from the rule of stare decisis is appropriate in this case.

3. The state can and, through the plain language of MCL 38.514; MSA 5.3364, did limit a township's ability to file charges against a police officer or a fire fighter to ninety days after the date of the violation. There is no discovery provision in the statute.

4. Limited retroactive application of this decision is appropriate. The complaint in this case was void. The petitioner is entitled to reinstatement, if otherwise qualified, as of the date of this opinion, but not to back pay.

Reversed and remanded.

REFERENCES

Am Jur 2d, Administrative Law § 271.

See ALR Index under Administrative Law; Limitation of Actions.

GRIFFIN, J., dissenting, stated that the decision of the civil service commission was supported by competent, material, and substantial evidence on the record and that the issue ruled upon by the Court of Appeals was not preserved, raised, briefed, or argued. The circuit court order affirming the commission's decision to terminate the petitioner's employment should be affirmed.

ADMINISTRATIVE LAW — CHARGES AGAINST FIRE FIGHTERS — LIMITA-TION OF ACTIONS.

> The state, by statute, has limited a township's ability to file charges against a fire fighter to ninety days after the date of the alleged violation; there is no discovery provision in the statute (MCL 38.514; MSA 5.3364).

*Petz & Povlitz, P.C.* (by *William G. Povlitz*), for the petitioner.

*McLain & Winters* (by *Wm. Douglas Winters*), for the respondent.

Before: TAYLOR, P.J., and GRIFFIN and W. G. SCHMA,* JJ.

TAYLOR, P.J. Petitioner appeals as of right a trial court order affirming a decision of the Ypsilanti Township Civil Service Commission (YTCSC) to sustain the termination of petitioner's employment as Ypsilanti Township's fire chief. We reverse.

This case stems from events that took place in April 1986 and resulted in the creation of two fraudulent civil service eligibility hiring lists for fire fighters; one list was dated April 7, 1986, and the other was dated April 21, 1986. The purpose of the lists was to rank applicants according to their written and oral exam results. However, both lists contained names of individuals who either had never taken the written and oral examinations or had failed those examinations. The April 7 list was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

used to hire four fire fighters on April 25, 1986. In July 1986, when the fraud was discovered, those four fire fighters were terminated.

A letter dated October 16, 1986, signed by Township Supervisor Ron Allen and six members of the township board, charged petitioner with five separate incidents of malfeasance in connection with his knowledge of the fraudulent lists and his failure to alert the township board. The letter indicated that his employment was terminated and that pursuant to the firemen's and policemen's service act (FPSA), MCL 38.514; MSA 5.3364, the matter was being referred to the YTCSC.

The YTCSC conducted hearings regarding the five charges against petitioner, and on December 8, 1987, issued a decision sustaining the termination of his employment. He filed a timely petition for review in the Washtenaw Circuit Court and the court affirmed the YTCSC's decision, concluding that the decision was supported by the record.

Relying on MCL 38.514; MSA 5.3364, petitioner argues that the charges against him were void ab initio because they were not brought within ninety days of the alleged violations. We agree.

The FPSA provided in pertinent part before its amendment by 1986 PA 155:

No member of any fire or police department within the terms of this act shall be removed, discharged, reduced in rank or pay, suspended or otherwise punished, except for cause, and in no event until he shall have been furnished with a written statement of the charges and the reasons for such actions, and *all charges shall be void unless filed within 90 days of the date of the violation.* [MCL 38.514; MSA 5.3364.]

In three rulings containing no rationale, this Court has concluded that, rather than running

from the date of the violation, the ninety-day period referred to in the statute begins running when the discharging authority discovers the misconduct. *Werner v Macomb Co Civil Service Comm,* 77 Mich App 533, 538; 258 NW2d 549 (1977), *Hunn v Madison Heights,* 60 Mich App 326, 332-333; 230 NW2d 414 (1975), and *Solomon v Highland Park Civil Service Comm,* 47 Mich App 536, 540; 209 NW2d 698 (1973). This reading of the statute is unsustainable because it is contrary to the statute's plain terms.

Michigan courts have repeatedly stated:

> It is a cardinal rule of statutory construction that the legislative intent must be gathered from the language used, if possible, and that such language shall be given its ordinary meaning unless a different interpretation is indicated. [*Goethal v Kent Co Supervisors,* 361 Mich 104, 111; 104 NW2d 794 (1960).]

Courts may not speculate regarding the probable intent of the Legislature when the statutory language is clear and unambiguous. *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Id.; Nat'l Exposition Co v Detroit,* 169 Mich App 25, 29; 425 NW2d 497 (1988).

It is our opinion that the language of MCL 38.514; MSA 5.3364 is clear, unambiguous, and capable of only one interpretation. The statute clearly and unambiguously provides that all charges filed after ninety days from the date of the violation are void. Reasonable minds could not differ with regard to the meaning of this statute. Accordingly, we reject the reasoning in the *Werner, Hunn,* and *Solomon* decisions because judicial

construction of this statute therein was inappropriate. There is no basis for interpreting the statute in a way that alters its plain meaning.

We note that the provision at issue in this case is in the nature of a statute of limitations. Accordingly, review and analysis of Michigan's various analogous statutes of limitation is helpful and provides support for our decision in this case.

In *Dyke v Richard*, 390 Mich 739; 213 NW2d 185 (1973), our Supreme Court dealt with a malpractice statute of limitations that required actions charging malpractice to be brought within two years from the conclusion of treatment. Like the statute at issue in this case, the malpractice statute of limitations did not contain a provision saving the action if the malpractice was first discovered after the two-year period had passed. The Supreme Court read such a discovery provision into the statute. The *Dyke* Court's reasoning supports our conclusion that such a discovery provision cannot be read into this act.

The *Dyke* Court reasoned that when the Legislature drafts a statute of limitations, it cannot unreasonably restrict the time within which suit may be brought; to do so deprives a plaintiff of procedural due process. Justice Cooley's thoughts were cited by the Court and are instructive:

> "The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal

remedy, all remedy whatsoever may be taken away. . . . It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought [citations omitted] and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law." [*Id.* at 746, citing *Price v Hopkin,* 13 Mich 318, 324 (1865).]

The Supreme Court reasoned that to a plaintiff who had no means to discover the malpractice within the two-year period, application of the statute of limitations abolishes his right to bring suit, and, thus, would violate procedural due process. *Dyke, supra* at 746-747. Accordingly, the *Dyke* Court held that a discovery provision should be implied as existing within the medical malpractice statute of limitations. *Id.* at 747.

In applying this reasoning to the FPSA, we must determine whether the township has standing to raise the constitutional due process issue. That is, would application of the ninety-day limitation period deprive the township of property without due process of law? A township does not have standing to demand constitutional protections, and, therefore, such a claim cannot be recognized. A local government entity, created by the state for the better ordering of government, has no privileges or immunities under the federal constitution or state constitution that they may invoke in opposition to the will of its creator, the state. *DeWitt Twp v Clinton Co,* 113 Mich App 709, 717; 319 NW2d 2 (1982). The state can and, through the plain language of this act, did limit a township's ability to file charges against a police officer or a fire fighter to ninety days after the date of the violation. No discovery provision should be read into the statute.

More recently, the Supreme Court addressed the issue of when a cause of action for the negligent acts of a hospital and its agents accrues for statute of limitations purposes. *Chase v Sabin,* 445 Mich 190; 516 NW2d 60 (1994). The *Chase* Court held that the discovery rule governs when the cause of action accrues. *Id.* at 192. Although the Court noted that the opinion did not address whether the discovery rule governs the date of accrual for other actions, *id.* at 192, n 1, the Court's reasoning is illustrative of why a discovery provision should not be read into § 14 of the FPSA.

In negligence and malpractice actions, the overriding policy concern is ensuring that potential plaintiffs have a reasonable opportunity to bring suit. *Id.* at 199. In those types of actions, the evidence on which the plaintiffs will generally rely to pursue their claims are the hospitals' and physicians' records. These defendants will usually control that evidence, as well as the plaintiffs' knowledge of the evidence. *Id.* at 200. This means that the hospitals and their agents are in a superior position to recognize the occurrence of a negligent act. Accordingly, liberal rules with regard to discovery are required to protect the plaintiffs' rights.

In contrast, the policy concern in actions brought pursuant to § 14 of the FPSA is to protect individual police officers or fire fighters from protracted fear of litigation. See *Bigelow v Walraven,* 392 Mich 566, 576; 221 NW2d 328 (1974). The Legislature's method of doing so was the imposition of the strict ninety-day limitation period. In these cases, the invariably knowledgeable party, the government, is suing the individual officer. The reasons for any concern about discovery are much reduced and, as a result, the assumptions that led the *Chase* Court to read a discovery provision into the statute in that case are inapplicable to the

FPSA. Therefore, this reasoning, as well as the fact that the township lacks standing to raise the constitutional due process issue, compels the holding that the discovery rule does not apply to claims filed pursuant to the FPSA.

The dissent states that this issue, whether respondent's filing of charges violated the ninety-day rule of MCL 38.514; MSA 5.3364, was not raised or preserved. With regard to this assertion, it should be noted that petitioner's question presented on appeal states: "Are the charges against Goodridge void ab initio because they were brought in violation of MCLA 38.514; MSA 5.3364?" Our answer to petitioner's question is yes, albeit for reasons different than those asserted by petitioner. Once a general issue is preserved, it is not novel for this Court to adopt an alternative rationale to that proposed. Indeed, that is the clear import of MCR 7.216(A)(7), which holds that this Court may "enter any judgment or order or grant further or different relief as the case may require."

Further, even if this issue was not raised in the present case, this Court should not knowingly be a party to such an indefensible, and undefended in all the appellate cases cited, misreading of the Legislature's express language. Public policy compels us not to act in furtherance of an unlawful project. In this regard, we recall the venerable principle that the courts will refuse to enforce illegal contracts even though none of the parties have raised the issue of illegality. See *Manning v Bishop of Marquette,* 345 Mich 130, 133-134; 76 NW2d 75 (1956), quoting the highwayman's case where the court was asked to decide, as between two scoundrels, who had cheated whom the more, reported in 2 Evans, Pothier on Obligations (3d Am ed), pp 2, 3. The order of the court in the highwayman's case was that the bill be dismissed

for impertinence and the solicitor fined. The plaintiff and the defendant in the highwayman's case were afterwards executed. Analogously, we must not continue the cavalier distortion of the statute's clear import, even if the wronged parties have, through weariness born of having been thrice rejected, not persevered to argue the position yet again. Rather, we must respect the well-established principle that a statute is to be construed in accordance with its plain meaning. We have done that here and are loath to consider it, as our dissenting brother does, imprudent and would hope such judicial conscientiousness is not extraordinary.

We are aware that, from a policy standpoint, the previous judicial gloss placed on this statute would seem preferable. However, policy selection is the task of the Legislature, not the prerogative of the judiciary. The mere fact that a statute appears impolitic or unwise is not sufficient for judicial construction but is a matter for the Legislature. *Lansing v Lansing Twp,* 356 Mich 641, 648; 97 NW2d 804 (1959). The Legislature must have intended the meaning it plainly expressed and the statute must be enforced as written. *Smith v Ruberg,* 167 Mich App 13, 16; 421 NW2d 557 (1988). It is our duty to apply the words used by the Legislature in their ordinarily understood fashion. *Id.*

In declining to follow the interpretation given this statute in *Werner, Hunn,* and *Solomon,* we are mindful that we are departing from stare decisis. The rule of stare decisis establishes uniformity, certainty, and stability in the law. However, the rule was never intended to perpetuate error. *Parker v Port Huron Hosp,* 361 Mich 1, 10; 105 NW2d 1 (1960). The case before us is one of the rare cases where it is clearly apparent that an

error in statutory construction has been made. *Id.* Thus, departure from the rule of stare decisis is appropriate in this case.

The dissent suggests that because the Legislature reenacted MCL 38.514; MSA 5.3364 after the *Solomon* line of cases was decided without specifically repudiating the judicially adopted discovery provision, we are now precluded by the doctrine of legislative acquiescence from deciding this case differently. However, like the doctrine of stare decisis, the doctrine of legislative acquiescence does not preclude this Court from correcting its prior errors. *Autio v Proksch Construction Co,* 377 Mich 517, 526; 141 NW2d 81 (1966). Because the *Solomon* line of cases engaged in inappropriate interpretation of a clear and unambiguous statute, we decline to follow it and hold that the plain language of the statute controls. We also note it may have been impossible for the Legislature to correct the error because the only language that could correct it had been used and misinterpreted already. Thus, the remedy available to the Legislature was emasculated.

Because we specifically decline to follow the *Solomon* line of cases, limited retroactive application of this decision is appropriate. While we recognize that in Michigan appellate court decisions generally are given full retroactivity, *Moorhouse v Ambassador Ins Co, Inc,* 147 Mich App 412, 420-421; 383 NW2d 219 (1985), limited retroactivity is the favored approach when overruling prior law. *Tebo v Havlik,* 418 Mich 350, 360; 343 NW2d 181 (1984). We believe limited retroactive application is warranted in this case because public bodies, as well as police officers and fire fighters, have relied on the old rule. Furthermore, the result in this case was not clearly foreshadowed because it was three times decided in a contrary fashion. *Id.*

Accordingly, limited retroactivity is warranted and petitioner is entitled to benefit from his victory. *Placek v Sterling Heights,* 405 Mich 638, 665; 275 NW2d 511 (1979); *Jahner v Dep't of Corrections,* 197 Mich App 111, 114; 495 NW2d 168 (1992).

Because the complaint was filed after the ninety-day limitation period, it was void. On the basis of the foregoing, petitioner is entitled to reinstatement, if otherwise qualified, as of the date of this opinion, but not to back pay. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

W. G. SCHMA, J., concurred.

GRIFFIN, J. *(dissenting).* In reversing the order of the lower court, the majority has held that the circuit court committed error requiring reversal in following the precedent of three prior decisions of this Court: *Werner v Macomb Co Civil Service Comm,* 77 Mich App 533; 258 NW2d 549 (1977), *Hunn v Madison Heights,* 60 Mich App 326; 230 NW2d 414 (1975), and *Solomon v Highland Park Civil Service Comm,* 47 Mich App 536; 209 NW2d 698 (1973). I respectfully dissent.

Today's decision overturning *Werner, Hunn,* and *Solomon* and establishing a new rule of law is imprudent and extraordinary. Neither petitioner nor respondent has requested such an action. Further, the issue ruled upon has not been preserved, raised, briefed, or argued. The citizens of Ypsilanti Township deserve better.

Without notice, the majority has established a new construction of the firemen and policemen's civil service act, MCL 38.514; MSA 5.3364, as the statute existed before its amendment by 1986 PA 155. Respondent township was not afforded an opportunity to argue the merits of our prior deci-

sions or to address other potentially important considerations such as detrimental reliance, stare decisis, and legislative acquiescence.

I would decide only those issues that are raised and preserved. I agree with the circuit court that the decision of the Ypsilanti Township Civil Service Commission is supported by competent, material, and substantial evidence on the record. Further, the alleged violation of the Open Meetings Act, MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.,* by the township board is without consequence because the legal authority for bringing the present charges lies with the township supervisor, not the township board. Petitioner's remaining issues are without merit.

I would affirm.